RANDOLPH, Presiding Justice,
for the Court:
¶ 1. The Madison County Circuit Court held that only the Mississippi Tort Claims Act (“MTCA”) applies to suits against the Mississippi Workers’ Compensation Group *821 Self-Insurer Guaranty Association.[1] The trial court dismissed all other claims, granting leave to amend the complaint for an MTCA action only. We reverse.
FACTS
¶ 2. An action was initiated by certain former members and the board of Mississippi Comp Choice Self-Insurers Fund (“Comp Choice”). Comp Choice was a workers’ compensation group self-insurer operating under a certificate of authority granted by the Mississippi Workers’ Compensation Commission (“Commission”). The Commission issues certificates of authority to self-insurer groups pursuant to Mississippi Code Section 71-3-75(3).[2] Defendant is the Mississippi Workers’ Compensation Group Self-Insurer Guaranty Association (“GGA”).
¶ 3. In 2008, the Commission ordered a review of Comp Choice. Based on information revealed in the review, the Commission required Comp Choice to execute a Memorandum of Understanding outlining a plan to “strengthen the financial and operational aspects of the [Comp Choice] Fund under the control and guidance of the Commission.” Six months later, the Commission decided not to approve Comp Choice for future operation. Comp Choice voluntarily surrendered its certificate of authority to operate as a group self-insurer in January 2009. GGA stepped into the shoes of Comp Choice to protect claimants, inter alia. See Miss.Code Ann. 71-3-153 (Rev. 2011).[3]
¶4. Comp Choice filed its complaint against GGA, alleging claims sounding in gross negligence, breach of fiduciary duty, bad faith, conversion, and a demand for an accounting, inter alia. GGA filed a motion to dismiss and claimed immunity under the MTCA and the Mississippi Workers’ Compensation Self-Insurer Guaranty Association Law.
¶ 5. The trial court granted the motion, finding that GGA was “covered” by the MTCA, sub silentio ruling that Plaintiffs could not pursue a “cause of action” as referenced in Mississippi Code Section 71-3-179.[4] The trial court held that Comp *822 Choice had failed to state a claim under the MTCA. The trial court gave Comp Choice twenty days to file an amended complaint. Comp Choice filed a motion to stay the proceedings and petitioned the Court for interlocutory appeal, which we granted. Comp Choice raises the following issues:
I. Did the trial court err in granting Defendant’s Motion to Dismiss Plaintiffs Amended Complaint founded upon the determination that the Appellee, an unincorporated legal entity, was covered by the Mississippi Tort Claims Act, and therefore, entitled to its various protections, immunities and exceptions pursuant to Miss.Code Ann. § 11-46-7?
II. Did the trial court err in granting Defendant’s Motion to Dismiss Plaintiff’s Amended Complaint based upon the determination that the Appellee, an unincorporated legal entity, was covered by the Mississippi Tort Claims Act, even where the immunity created in the Mississippi Workers’ Compensation Self-Insurer Guaranty Association in Miss.Code Ann. § 71-3-179 abrogated the immunity afforded under the Mississippi Tort Claims Act in Miss.Code Ann. § 11-46-7?[5]
STANDARD OP REVIEW
¶6. The grant of a motion to dismiss raises a question of law that is reviewed de novo. Little v. Miss. Dep’t of Transp., 129 So.3d 132, 135 (¶ 5) (Miss.2013) (citation omitted). A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) should not be granted unless the court is certain that the plaintiff is not entitled to relief under any set of facts. Id.
ANALYSIS
I. Did the trial court err in granting Defendant’s Motion to Dismiss Plaintiffs Amended Complaint based upon the determination that GGA was covered by the Mississippi Tort Claims Act?
¶ 7. Comp Choice filed an amended complaint, stating, inter alia, that GGA should not be subject to the immunity provided in Mississippi Code Section 71-3-179 (Rev. 2011), asserting that GGA’s actions were outside the immunity granted by the statute. GGA responded by filing a nine-page Motion to Dismiss the Plaintiff’s Amended Complaint, “pursuant to Mississippi Rule of Civil Procedure 12(b)(6),” with sixteen attached exhibits, arguing that it was covered by the immunity granted under Section 71-3-179 and under the MTCA pursuant to Mississippi Code Section 11-46-1, et seq., claiming to be an instrumentality of the Commission. Thereafter, the trial court determined that GGA “... is an entity covered by the MTCA.” Whether GGA is an instrumentality of the Commission cannot be determined by *823 an examination of the amended complaint before this Court.[6]
¶ 8. Whether GGA is an instrumentality of the Commission is a fact-driven determination, It cannot be made until all facts are developed and considered, as shown by our caselaw. In Bolivar Leflore Medical Alliance, LLP v. Williams, this Court provided the first definition of an instrumentality — “something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body.” Bolivar Leflore Med. Alliance, LLP v. Williams, 938 So.2d 1222, 1228 (Miss.2006). Bolivar offered a comparison of the facts in that case to the facts in Watts v. Tsang, a case in which this Court held that medical practice group UAS was an instrumentality of the University of Mississippi Medical Center (“UMMC”). Bolivar, 938 So.2d at 1228 (citing Watts v. Tsang, 828 So.2d 785, 793-94 (Miss.2002)).
¶ 9. In Watts, this Court considered numerous facts in its determination: (1) UMMC created UAS; (2) UAS was “overseen” by UMMC; (3) UAS supplemented income to UMMC’s faculty; (4) the day-today activities were overseen by the department chair, who “serve[d] at the pleasure of the chancellor of the medical school;” (5) UAS consisted only of “full-time UMMC faculty-physicians;” (6) the faculty physicians could practice only in locations approved by UMMC; and (7) “... money [was] distributed only on a point system based on factors other than mere patient service.” Watts, 828 So.2d at 790, 794.
¶ 10. In Bolivar, this Court found that Bolivar Leflore Medical Alliance (“BLMA”) and its employee, Dr. Warring-ton, were an instrumentality of Greenwood Leflore Hospital (“GLH”), a community hospital, based on facts developed. Bolivar, 938 So.2d at 1232. We found the following facts: (1) GLH created and oversaw BLMA, (2) two-thirds of the Executive Committee, which oversaw and controlled the “business affairs” of BLMA, was appointed by GLH, (3) GLH retained 98% interest in BLMA’s “income and losses,” (4) pursuant to contract, Warrington could provide services only for GLH or the partnership, and (5) Warrington had entered into a covenant not to compete in the event that he left the partnership. Bolivar, 938 So.2d at 1228. Specifically, this Court determined that BLMA was an instrumentality of GLH “[s]ince GLH ... a ‘community hospital’ ... maintains 98% interest in the income and losses of BLMA and two-thirds (2/3) control over the Executive Committee membership of BLMA.” Bolivar, 938 So.2d at 1231.
¶ 11. In Estate of Fedrick ex rel. Sykes v. Quorum Health Resources, Inc., 45 So.3d 667 (Miss.Ct.App.2009), reversed on other grounds by Estate of Fedrick ex rel. Sykes v. Quorum Health Resources, Inc., 45 So.3d 641 (Miss.2010), the Court of Appeals found that Quorum Health Resources, Inc., was an instrumentality of Neshoba County Nursing Home (“NCNH”). Estate of Fedrick, 45 So.3d at 675. The facts revealed Quorum and NCNH had entered into an agreement which specifically stated that “... Quorum [was] acting solely as the agent of the Hospital.” Id. The agreement further stipulated that NCNH was not relinquishing any of its “control or authority” to Quorum. Id. at 674. It was undisputed that Quorum was an agent of NCNH, and therefore, it was clear from the agreement that Quorum was an instrumentality of *824 NCNH. All three cases are /ací-specifíe and are wholly unrelated to the success, vel non, of a Rule 12(b)(6) motion.
¶ 12. In the case sub judice, facts were and are still undeveloped, precluding the trial court and this Court from determining whether Plaintiffs claims, as alleged in its complaint, can be pursued only under the MTCA, as ordered by the trial court, and Plaintiff may not pursue a cause of action as contemplated by Section 71-3-151, et seq., or otherwise. Absent factual development, no court at this stage of the proceedings could accurately discern whether GGA is an instrumentality of the Commission, vel non, as argued by GGA.
CONCLUSION
¶ 18. Therefore, the judgment of the Madison County Circuit Court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
¶ 14. REVERSED AND REMANDED.
WALLER, C.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.; LAMAR, J„ JOINS IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR AND PIERCE, JJ.

. The Mississippi Legislature created the Mississippi Workers’ Compensation Group Self-insurer Guaranty Association by providing that “... all group self-insurers shall be and remain members of the group association as a condition of their authority under Section 71-3-75[.]” Section 71-3-159 further states "... any individual or group self-insurer composed of the state, or any agency thereof, or county or municipal governments shall not be required to be members of the individual association or the group association.” Miss. Code Ann. § 71-3-159 (Rev. 2011).

. Under this subsection, upon the Commission’s approval, two or more employers "engaged in a common type of business activity or pursuit, or having other reasons to associate,” may agree to pool their liabilities. A self-insured group, as is present in the case sub judice, shall consist of "employer members of the same bona fide trade association or trade group.” Miss.Code Ann. § 71-3-75(3) (Rev. 2011).

. Guaranty associations’ raison d’^etre is to assume insurers’, not the government’s, duties and obligations, in the event of insolvency of a member of the association. "[T]he sole purpose of the Insurance Guaranty Act is to protect the insured from insolvent companies and to require the financially healthy insurance companies to involuntarily contribute to protect the public.” Owens Corning v. Miss. Ins. Guar. Ass’n, 947 So.2d 944, 946 (Miss.2007) (citing Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass’n, 560 So.2d 129, 135 (Miss.1989)). GGA shares a common purpose, i.e., to protect workers from insolvent insurers.

. The language of the immunity granted by Mississippi Code Section 71-3-151, et seq., is different and significantly more restrictive than the immunities granted by the MTCA. Specifically, Section 71-3-179 pertinently provides, "... no cause of action ... shall arise against ... [the] association ... for any good faith, affirmative action taken by any of *822 them[.] Such immunity shall not extend to any acts of gross negligence by [the] association ... committed in the performance of their duties hereunder.” Miss.Code Ann. § 71-3-179 (Rev. 2011).

. GGA stated the issue as follows: "Did the trial court correctly determine that the Mississippi Workers’ Compensation Group Self-Insurer Guaranty Association was an instrumentality of the Mississippi Workers’ Compensation Commission relevant to the actions underlying Plaintiffs' claims: that the Guaranty Association was, therefore, a covered entity under the MTCA relative to those actions; and that the MTCA provided the exclusive means for Plaintiffs to bring their claims against the Guaranty Association based upon those actions?”

. If a court considers anything outside the complaint, an order of dismissal on a Rule 12(b)(6) motion will not lie. A trial court “shall only consider the allegations contained in the pleading asserting the claim.” See Miss. R. Civ. P. 56, note.