KING, Justice,
for the Court:
¶ 1. This interlocutory appeal is before the Court from the denial of a motion to dismiss or, alternatively, motion for summary judgment. The Court must decide whether Glen Poppenheimer, a volunteer firefighter, is immune under the Mississippi Tort Claims Act (MTCA) for claims arising from an automobile accident. The county court found that a volunteer fire department is not a government entity for purposes of the MTCA and denied Pop-penheimer’s motion.
¶2. Aggrieved, Poppenheimer appeals, raising two issues:
I. Whether the Bridgetown Volunteer Fire Department (BVFD) and its employees receive protection under the MTCA.
II. Whether the county court erred by denying his motion to dismiss or, in the alternative, for summary judgment.
We find that the BVFD is not a governmental entity or instrumentality of the state, but an independent contractor. Also, as a volunteer firefighter, Poppen-heimer is not immune from suit arising out of alleged automobile negligence. Thus, we affirm the county court’s denial of Pop-penheimer’s motions.
FACTS AND PROCEDURAL HISTORY
¶ 3. The collision occurred in DeSoto County, Mississippi, on January 27, 2007. Poppenheimer, a volunteer firefighter, responded to a fire call at 3:30 a.m. According to Poppenheimer, he activated his emergency lights and drove only forty miles per hour to his destination. As Pop-penheimer drove northbound on Malone Road and Joe Coyle drove westbound on Windermere Road, their vehicles collided, and both suffered injuries. Coyle died March 6, 2007, which his Estate claims was a result of those injuries.
¶ 4. On January 14, 2010, Poppenheimer sued Mississippi Farm Bureau Insurance Company, his automobile insurer, and Coyle’s Estate in the County Court of DeSoto County. Poppenheimer alleged that Coyle failed to yield the right-of-way, causing the collision and his subsequent *1062 injuries. On January 25, 2010, the Estate filed its answer, denying all allegations, along with a counter-claim. That same day, the Estate[1] also filed a complaint for wrongful death in the Circuit Court of DeSoto County. The Estate sought to remove the action from county court to circuit court. But, ultimately, the parties agreed to transfer the circuit-court filing to county court, and the cases were consolidated.
¶5. On March 3, 2010, Poppenheimer filed a motion to dismiss or, alternatively, a motion for summary judgment and argued that, as a volunteer firefighter, he was immune from suit under the MTCA. Pop-penheimer also argued that the Estate had failed to produce any evidence of his alleged negligence. Opposing the matter, the Estate contended that the MTCA did not cover volunteer firefighters and that Poppenheimer drove negligently, leaving his lane of travel and thereby causing the accident.
¶ 6. The county court determined that the Legislature did not include volunteer firefighters under the MTCA and, given there are 10,000 volunteer firefighters in the state, this was not a simple inadvertence. The county court found the BVFD was an independent contractor, not a political subdivision or instrumentality of the state, and thus was not covered under the MTCA. Also, the county court ruled that whether Poppenheimer’s negligence caused the accident was a jury question. Accordingly, on March 23, 2011, the county court denied Poppenheimer’s motions. Afterward, Poppenheimer filed an interlocutory appeal, which this Court granted.
■ ANALYSIS
¶ 7. This Court reviews the grant or denial of a motion to dismiss or motion for summary judgment de novo.[2] “When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.”[3]
¶ 8. Regarding summary judgment, the moving party bears the burden to show that no genuine issue of material fact exists.[4] Thus, this Court reviews the evidence in the light most favorable to the nonmoving, party.[5] Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[6]
¶ 9. Because immunity is a question of law, the Court also reviews questions regarding the application of the MTCA de novo.[7]
I. Immunity Under the Mississippi Tort Claims Act
¶ 10. Poppenheimer argues summary judgment was appropriate because he, as a *1063 volunteer firefighter, is immune from suit under the MTCA. Poppenheimer maintains that: (1) state law exempts firefighters engaged in the performance of their duties from liability for negligence, (2) the BVFD is a governmental entity, and (3) if not a governmental entity, the BVFD is an instrumentality of the county. Conversely, the Estate maintains that, as an independent contractor, a volunteer fire department is neither a governmental entity nor an instrumentality of the county; thus, volunteer firefighters are not covered under the MTCA. The Estate argues further that a volunteer firefighter’s liability exemption is governed by Mississippi Code Section 95-9-1 (Rev.2004), which specifically removes protection for automobile negligence.
A. Political Subdivision/Body Politic
¶ 11. The MTCA provides, in pertinent part, that:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.... [8]
Poppenheimer believes this statute applies directly to volunteer firefighters. He notes one jurisdiction that has extended sovereign immunity to volunteer fire departments, but that state had a specific statute which exempted firefighting companies from liability when they had contracted with a county to provide fire-protection services.[9]
¶ 12. Poppenheimer further states that BVFD is a political subdivision of the state. A political subdivision is defined as:
[A]ny body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, community hospital as defined in Section 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.[10]
He contends BVFD is a body politic, which is defined as:
[A] group or body of citizens organized for the purpose of exercising governmental functions; that such a group may be large or small, and that it may be a group within a group, including counties even though they are but agencies of the state. It may be formed by a voluntary association of individuals ... and applies to a body incorporated by the state and *1064 charged with the performance of a public duty.... [11]
Because firefighting and fire suppression are important governmental functions regulated by the state, Poppenheimer maintains that volunteer fire departments are protected by the MTCA.[12] Poppenheimer also notes that the Mississippi Tort Claims Board has recognized the BVFD as a political subdivision in several correspondences relating to insurance coverage.
¶ 13. . Previously, the Court addressed this very, issue in Flye v. Spotts.[13] In Flye, a volunteer firefighter who responded to an emergency call in his personal vehicle collided with a sheriffs department vehicle, injuring a passenger.[14] The passenger later sued Flye and the volunteer fire department.[15] The defendants moved for summary judgment, claiming immunity under the MTCA.[16] Like Poppenheimer, the defendants argued that the volunteer fire department was immune because it “was a ‘body corporate’ providing ‘governmental activities’ under the definition of a ‘political subdivision.’ ”[17]
¶ 14. Following a detailed analysis, the Court held that the terms “body politic” and “body corporate” applied only to public, government entities and did not include private corporations.[18] The Court declined to find that “the use of county equipment or the receipt of county funds, including liability insurance, causes the volunteer fire department to become a political subdivision.” [19] Thus, as a private, nonprofit organization, the volunteer fire department did not meet the definition of a “political subdivision.”
B. Instrumentality of the County or Independent Contractor
¶ 15. Alternatively, Poppen-heimer argues that BVFD is protected as an instrumentality of the county. “An instrumentality is defined as ‘something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body.’ ” [20] Because BVFD provides fire protection services, a government function, Poppenheimer maintains that BVFD is an instrumentality of the county. Conversely, the Estate argues that BVFD is an independent contractor.
¶ 16. In simple terms, an “independent contractor” has been defined as “a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other’s right to control with respect to his physical conduct in the performance of the undertaking.” [21] The county court determined that *1065 BVFD was an independent contractor because the agreement between BVFD and the county did not grant the county any supervisory control over BVFD’s day-today operations, and the county did not provide the volunteers with benefits, retirement, insurance, and so on.[22] Because BVFD was an independent contractor, the county court held that Poppenheimer was not immune under the MTCA. Poppen-heimer maintains that BVFD is not an independent contractor, because the State regulates its activities.[23]
¶ 17. The Court addressed this issue in Flye as well.[24] In Flye, the volunteer fire department admitted its independent-contractor status, but still claimed immunity[25] Poppenheimer does not concede that BVFD is an independent contractor, but we find that it is.[26] While fire-protection services generally are protected under the MTCA, the Court in Flye found “that a private company and its employees who provide ‘governmental activities’ via contract with a political subdivision are not immune from liability under the MTCA.” [27] Because the statute did not provide an exception for private, volunteer fire departments, the Flye Court declined to find they were protected under the MTCA.[28] We do as well.
C. Volunteer Liability
¶ 18. According to the Estate, the Legislature has addressed volunteer-firefighter liability. However, the Estate claims that Mississippi Code Section 95-9-1, not the MTCA, governs the issue. See Miss. Code Ann. § 95-9-1 (Rev.2004).
¶ 19. Section 95-9-1 provides some liability exemptions for volunteers and sports officials.[29] A qualified volunteer is “any person who freely provides services, goods or the use of real or personal property or equipment, without any compensation or charge to any volunteer agency in connection with a volunteer activity.”[30] As a volunteer firefighter, Poppenheimer provides fire-protection services and is not compensated for his work.
¶ 20. The statute specifically lists fire protection as a “volunteer activity.”[31] It also provides that a “[v]olunteer agency shall also include any volunteer firefighter association which is eligible to be designated as a nonprofit corporation under 501(c)(3) by the United States Internal Revenue Service.”[32] This includes the BFVD.
¶ 21. However, the statute limits volunteer immunity:
A qualified volunteer who renders assistance to a participant in, or a recipient, consumer or user of the services or benefits of a volunteer activity shall not be liable for any civil damages for any per *1066 sonal injury or property damage caused to a person as a result of any acts or omissions committed in good faith except:
[[Image here]]

Where the qualified volunteer negligently operates a motor vehicle, aircraft, boat or other powered mode of conveyance .
[33]

Thus, a volunteer firefighter is subject to suit where he is accused of negligently operating an automobile. The Estate alleges that Poppenheimer failed to maintain a proper lookout, exercise ordinary care, control his vehicle, or devote full time and attention to driving, and deliberately or recklessly drove into the opposite lane of traffic, causing Coyle’s injuries and subsequent death. Based on these allegations, Poppenheimer is subject to suit under Section 95-9-1 (3)(b).
¶ 22. The Estate also cites an Attorney General’s (AG) opinion to support its position. Although not binding on this Court, AG opinions are reviewed as persuasive authority.[34] In 1991, the AG was questioned about the relationship between volunteer firefighters and counties.[35] Two responses are of particular importance to this case. First, the AG was asked, “Who is responsible for workmen’s compensation?” The AG responded, in pertinent part, that “While volunteer firemen certainly provide an invaluable service to the public, they are not employees of the county.” [36], [37] Second, the AG was asked, “Are all volunteer fire members covered under the Good Samaritan Act? If so, what coverage?”[38] The AG responded:
Generally, volunteer fire members are protected under the “Good Samaritan” law, Miss.Code Ann. §§ 95-9-1 et seq., as amended. However, it is important to understand that to qualify under this law the volunteer must be a person who “freely provides [fire-fighting] services ... without any compensation [excluding actual expenses, including travel] or charge ...” Miss.Code Ann. § 95-9-1(a). Furthermore, even a qualified volunteer is not immune from every act. For example, members are not protected from liability while acting outside the scope of the volunteer activity and they are not immune from liability for acts or omissions arising out of the negligent operation of a motor vehicle, aircraft, boat or other powered mode of conveyance .... [39]
¶ 23. Thus, Poppenheimer’s argument fails. Section 95-9-1 governs a volunteer firefighter’s immunity or lack thereof. Although the statute exempts volunteer firefighters from some liability, they are not immune from automobile-negligence claims. Because the Estate accuses Pop-penheimer of automobile negligence, he falls outside the act’s protection.
II. Negligence
¶ 24. Last, Poppenheimer argues that the Estate failed to present any evidence of negligence; thus, the county court erred by denying his summary-judg *1067 ment motion. The Estate argues that, in collision cases, negligence is a fact question for the jury.
¶ 25. To prove negligence, a plaintiff must show duty, breach of duty, causation, and damages.[40] As previously stated:
[T]he party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists ... [S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.[41]
¶ 26. Poppenheimer claims no evidence supports the Estate’s position; thus, no genuine issue of material fact exists. He cites his affidavit as proof, claiming he drove only forty miles per hour and activated his emergency lights. Poppenheimer claims he had the right-of-way, and Coyle, who pulled into the intersection, was negligent.
¶27. To show Poppenheimer’s negligence, the Estate cites excerpts from his deposition.[42] The Estate also provides the accident report, which suggests that Pop-penheimer left his lane of travel and struck Coyle’s vehicle. Based on this, the Estate claims Poppenheimer failed to maintain a proper lookout, exercise ordinary care, control his vehicle, or devote full time and attention to driving, and deliberately or recklessly drove into the opposite lane of traffic.[43] In denying Poppenheimer’s summary-judgment motion, the county court noted critical information missing from the record and determined that a fact question existed regarding Poppenheimer’s operation of his vehicle.[44]
¶ 28. This Court has stated:
Just because a person may be driving on a through highway with the lawful right-of-way to proceed through an intersection "with another road where there are located stop signs, does not mean that person may approach and enter the intersection with impunity and without exercising caution.[45]
*1068 So, whether Poppenheimer, Coyle, or both caused the accident is a jury issue.[46]’ [47] Because there are genuine issues of material fact regarding the parties’ liability, the county court properly denied Poppenheimer’s summary-judgment motion.
CONCLUSION
¶ 29. Undoubtedly, volunteer fire departments provide valuable services to their communities. However, those private entities are not clothed with immunity under the MTCA. In this case, BVFD is a private entity and an independent contractor. It is not a political subdivision, a body politic, or an instrumentality of the state. Thus, Poppenheimer, as a volunteer firefighter, is not immune under the MTCA.
¶ 30. Further, Section 95-9-1 addresses directly a volunteer firefighter’s immunity. Under the statute, volunteers are subject to suit for negligent operation of an automobile. Because the Estate accuses Pop-penheimer of such, he does not enjoy immunity.
¶ 31. Also, whether Poppenheimer, Coyle, or both caused the accident is a jury issue. Thus, the county court properly denied Poppenheimer’s summary-judgment motion. We affirm the denial of Poppenheimer’s motions and remand this case for further proceedings.
¶ 32. AFFIRMED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.

. The wrongful-death action was filed by Coyle's heirs at law: wife, Dorothy Coyle, daughter Lisa Coyle Souder, and son, William Coyle. We will refer simply to the wrongful-death heirs as "the Estate."

. Whitaker v. Limeco Corp., 32 So.3d 429, 433-34 (¶ 10) (Miss.2010).

.Id. at 434 (¶ 10).

. Brent Towing Co., Inc. v. Scott Petroleum Corp., 735 So.2d 355, 358-59 (¶ 12) (Miss. 1999).

. Id.

. Id.

. City of Jackson v. Harris, 44 So.3d 927, 931 (¶ 19) (Miss.2010).

. Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002) (emphasis added).

. See Nat'l R.R. Passenger Corp. v. Catlett Volunteer Fire Co., Inc., 241 Va. 402, 404 S.E.2d 216(1991). The statute provides that:
Any county may contract with any volunteer fire-fighting companies or associations in the county or towns therein for the fighting of fire in any county so contracting.... If any contract be entered into by a county the fire-fighting company shall be deemed to be an instrumentality of the contracting county and as such exempt from suit for damages done incident to fighting fires therein.
Id. at 406, 404 S.E.2d 216 (citing Va.Code Ann. § 27-23.6). No such statutory authority exists in Mississippi.

.Miss.Code Ann. § 11 — 46—1(i) (Rev.2002).

. Urban Renewal Agency of City of Aberdeen v. Tackett, 255 So.2d 904, 905 (Miss.1971).

. Poppenheimer cites multiple statutes, many of which provide or authorize payments or funding to volunteer fire departments. See, e.g., Miss.Code Ann. §§ 19-5-95; 19-5-97 (Rev.2003); 83-1-39; and 83-13-23 (Rev. 2011). He cites a statute that provides instructions for rating a fire district. Miss.Code Ann. § 83-3-24 (Rev.2011). And he cites the statute which creates the state fire academy. Miss.Code Ann. § 45-11-7 (Rev.2011).

. Flye v. Spotts, 94 So.3d 240 (Miss.2012).

. Id. at 242 (¶ 2).

. Id. at 243 (¶ 3).

. Id.

. Id.

. Id. at 244-45 (¶¶ 5-10).

. Id. at 246 (¶ 12).

. Bolivar Leflore Med. Alliance, LLP v. Williams, 938 So.2d 1222, 1228 (¶ 16) (Miss.2006).

. Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 148 (Miss.1994) (citations omitted).

. In the contract, the parties agree that BVFD, to the best of its ability, would provide fire protection services to the county in exchange for insurance rebate and county millage funds, which were to be used to improve and enhance "rural protection and fire-fighting capability” and curb expenses incurred for providing these services. The contract did not allow the county to oversee BVFD’s daily activities.

. See supra n. 12.

. Flye, 94 So.3d at 246-48 (¶¶ 13-15).

. Id. at 246-47 (¶ 13).

. See supra ¶ 14.

. Flye, 94 So.3d at 247-48 (¶¶ 14-15).

. Id. at 247-48 (¶ 15).

. Miss.Code Ann. § 95-9-1 (Rev.2004).

. Miss.Code Ann. § 95-9-l(a).

. Miss.Code Ann. § 95-9-l(c).

. Miss.Code Ann. § 95-9-l(b).

. Miss.Code Ann. § 95-9-1(3)(b) (emphasis added).

. In re Assessment of Ad Valorem Taxes on Leasehold Interest Held by Reed Mfg., Inc. ex rel. Itawamba County Bd. of Supervisors, 854 So.2d 1066, 1071 (¶ 11) (Miss.2003).

. Gary Beech, Op. Att'y Gen., 1991 WL 577518, *1 (April 16, 1991).

. Id. (emphasis added).

. The AG reiterated this statement in a subsequent opinion. See Jeffrey Hollimon, Op. Att’y Gen., 1995 WL 461708, *1 (July 19, 1995).

. Id.

. Id. (emphasis added).

. Duckworth v. Warren, 10 So.3d 433, 440 (¶ 23) (Miss.2009).

. Buckel v. Chaney, 47 So.3d 148, 153 (¶ 10) (Miss.2010).

. Poppenheimer testified, "I never thought anything in the world about him not seeing me or running the- — you know, coming out of the intersection.” Because Poppenheimer had noticed, prior to the collision, that the other volunteers had the fire truck ready and were waiting for him, the Estate claims Pop-penheimer's attention was not focused on Coyle. Poppenheimer also testified that his speed did not change when he approached the intersection. The Estate claims this failure to reduce speed is a jury question. Pop-penheimer’s brief includes a lengthy argument regarding the antiquity of the required-speed-reduction statute. See Miss.Code Ann. § 63-3-505 (Rev.2004). But we find that this analysis is inappropriate on interlocutory appeal.

. See Miss.Code Ann. §§ 63-3-505 (required speed reductions); 63-3-601 (vehicles to be driven on right half of the roadway and exceptions); 63-3-611 (passing on the left); 63-3-1201 (reckless driving); 63-3-1213 (careless driving) (Rev.2004).

. The record was void of any mention of the applicable speed limit. The county court relied on the following cases: Richardson v. Adams, 223 So.2d 536 (Miss.1969) (whether a person's failure to reduce speed at an intersection amounts to negligence is a question of fact for the jury); Shaw v. Phillips, 193 So.2d 717 (Miss.1967) (whether approaching motorist was guilty of any negligence which proximately caused or contributed to the accident was a fact question for the jury)).

. Thompson ex rel. Thompson v. Lee County Sch. Dist., 925 So.2d 57, 71 (¶21) (Miss. 2006).

. Upchurch ex rel. Upchurch v. Rotenberry, 761 So.2d 199, 204 (¶ 21) (Miss.2000).

. "Mississippi is a comparative-negligence state.” Solanki v. Ervin, 21 So.3d 552, 565 (¶ 34) (Miss.2009).