# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-00666-SCT

*THE FORMER BOARD OF TRUSTEES AND*
*MEMBERS OF MISSISSIPPI COMP CHOICE*
*SELF-INSURERS FUND*

*v.*

*MISSISSIPPI WORKERS' COMPENSATION*
*GROUP SELF-INSURER GUARANTY*
*ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | KATHRYN L. WHITE |
| | JACK D. PRICE |
| | JENNIFER H. SCOTT |
| | ANDREW D. SWEAT |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | KATHRYN LINDSEY WHITE |
| | JAMES D. SHANNON |
| ATTORNEYS FOR APPELLEE: | JENNIFER HUGHES SCOTT |
| | ANDREW D. SWEAT |
| | JOHN DAVID PRICE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 11/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Madison County Circuit Court held that only the Mississippi Tort Claims Act

("MTCA") applies to suits against the Mississippi Workers' Compensation Group Self-

Insurer Guaranty Association.[1] The trial court dismissed all other claims, granting leave to amend the complaint for an MTCA action only. We reverse.

## FACTS

¶2. An action was initiated by certain former members and the board of Mississippi Comp Choice Self-Insurers Fund ("Comp Choice"). Comp Choice was a workers' compensation group self-insurer operating under a certificate of authority granted by the Mississippi Workers' Compensation Commission ("Commission"). The Commission issues certificates of authority to self-insurer groups pursuant to Mississippi Code Section 71-3-75(3).[2] Defendant is the Mississippi Workers' Compensation Group Self-Insurer Guaranty Association ("GGA").

¶3. In 2008, the Commission ordered a review of Comp Choice. Based on information revealed in the review, the Commission required Comp Choice to execute a Memorandum of Understanding outlining a plan to "strengthen the financial and operational aspects of the

---

[1]The Mississippi Legislature created the Mississippi Workers' Compensation Group Self-insurer Guaranty Association by providing that " . . . all group self-insurers shall be and remain members of the group association as a condition of their authority under Section 71-3-75[.]" Section 71-3-159 further states " . . . any individual or group self-insurer composed of the state, or any agency thereof, or county or municipal governments shall not be required to be members of the individual association or the group association." Miss. Code Ann. § 71-3-159 (Rev. 2011).

[2]Under this subsection, upon the Commission's approval, two or more employers "engaged in a common type of business activity or pursuit, or having other reasons to associate," may agree to pool their liabilities. A self-insured group, as is present in the case *sub judice*, shall consist of "employer members of the same bona fide trade association or trade group." Miss. Code Ann. § 71-3-75(3) (Rev. 2011).

2

[Comp Choice] Fund under the control and guidance of the Commission." Six months later, the Commission decided not to approve Comp Choice for future operation. Comp Choice voluntarily surrendered its certificate of authority to operate as a group self-insurer in January 2009. GGA stepped into the shoes of Comp Choice to protect claimants, *inter alia*. *See* Miss. Code Ann. 71-3-153 (Rev. 2011).[3]

¶4.     Comp Choice filed its complaint against GGA, alleging claims sounding in gross negligence, breach of fiduciary duty, bad faith, conversion, and a demand for an accounting, *inter alia*. GGA filed a motion to dismiss and claimed immunity under the MTCA and the Mississippi Workers' Compensation Self-Insurer Guaranty Association Law.

¶5.     The trial court granted the motion, finding that GGA was "covered" by the MTCA, *sub silentio* ruling that Plaintiffs could not pursue a "cause of action" as referenced in Mississippi Code Section 71-3-179.[4]     The trial court held that Comp Choice had failed to

---

[3]Guaranty associations' *raison d'être* is to assume insurers', not the government's, duties and obligations, in the event of insolvency of a member of the association. "[T]he sole purpose of the Insurance Guaranty Act is to protect the insured from insolvent companies and to require the financially healthy insurance companies to involuntarily contribute to protect the public." **Owens Corning v. Miss. Ins. Guar. Ass'n**, 947 So. 2d 944, 946 (Miss. 2007) (citing **Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n**, 560 So. 2d 129, 135 (Miss. 1989)). GGA shares a common purpose, i.e., to protect workers from insolvent insurers.

[4]The language of the immunity granted by Mississippi Code Section 71-3-151, *et seq.*, is different and significantly more restrictive than the immunities granted by the MTCA. Specifically, Section 71-3-179 pertinently provides, " . . . no cause of action . . . shall arise against . . . [the] association . . . for any good faith, affirmative action taken by any of them[.] Such immunity shall not extend to any acts of gross negligence by [the] association . . . committed in the performance of their duties hereunder." Miss. Code Ann. § 71-3-179 (Rev. 2011).

3

state a claim under the MTCA. The trial court gave Comp Choice twenty days to file an amended complaint. Comp Choice filed a motion to stay the proceedings and petitioned the Court for interlocutory appeal, which we granted. Comp Choice raises the following issues:

I. Did the trial court err in granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint founded upon the determination that the Appellee, an unincorporated legal entity, was covered by the Mississippi Tort Claims Act, and therefore, entitled to its various protections, immunities and exceptions pursuant to Miss. Code Ann. § 11-46-7?

II. Did the trial court err in granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint based upon the determination that the Appellee, an unincorporated legal entity, was covered by the Mississippi Tort Claims Act, even where the immunity created in the Mississippi Workers' Compensation Self-Insurer Guaranty Association in Miss. Code Ann. § 71-3-179 abrogated the immunity afforded under the Mississippi Tort Claims Act in Miss. Code Ann. § 11-46-7?[5]

## STANDARD OF REVIEW

¶6. The grant of a motion to dismiss raises a question of law that is reviewed *de novo*. *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 135 (¶ 5) (Miss. 2013) (citation omitted). A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) should not be granted unless the court is certain that the plaintiff is not entitled to relief under any set of facts. *Id.*

---

[5]GGA stated the issue as follows: "Did the trial court correctly determine that the Mississippi Workers' Compensation Group Self-Insurer Guaranty Association was an instrumentality of the Mississippi Workers' Compensation Commission relevant to the actions underlying Plaintiffs' claims; that the Guaranty Association was, therefore, a covered entity under the MTCA relative to those actions; and that the MTCA provided the exclusive means for Plaintiffs to bring their claims against the Guaranty Association based upon those actions?"

4

**I.**   **Did the trial court err in granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint based upon the determination that GGA was covered by the Mississippi Tort Claims Act?**

¶7.   Comp Choice filed an amended complaint, stating, *inter alia*, that GGA should not be subject to the immunity provided in Mississippi Code Section 71-3-179 (Rev. 2011), asserting that GGA's actions were outside the immunity granted by the statute. GGA responded by filing a nine-page Motion to Dismiss the Plaintiff's Amended Complaint, "pursuant to Mississippi Rule of Civil Procedure 12(b)(6)," with sixteen attached exhibits, arguing that it was covered by the immunity granted under Section 71-3-179 and under the MTCA pursuant to Mississippi Code Section 11-46-1, *et seq*, claiming to be an instrumentality of the Commission. Thereafter, the trial court determined that GGA " . . . is an entity covered by the MTCA." Whether GGA is an instrumentality of the Commission cannot be determined by an examination of the amended complaint before this Court.[6]

¶8.   Whether GGA is an instrumentality of the Commission is a fact-driven determination, It cannot be made until all facts are developed and considered, as shown by our caselaw. In *Bolivar Leflore Medical Alliance, LLP v. Williams*, this Court provided the first definition of an instrumentality – "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch

---

[6]If a court considers anything outside the complaint, an order of dismissal on a Rule 12(b)(6) motion will not lie. A trial court "shall only consider the allegations contained in the pleading asserting the claim." *See* Miss. R. Civ. P. 56, note.

esp. of a governing body." ***Bolivar Leflore Med. Alliance, LLP v. Williams***, 938 So. 2d 1222, 1228 (Miss. 2006). ***Bolivar*** offered a comparison of the *facts* in that case to the *facts* in ***Watts v. Tsang***, a case in which this Court held that medical practice group UAS was an instrumentality of the University of Mississippi Medical Center ("UMMC"). ***Bolivar***, 938 So. 2d at 1228 (citing ***Watts v. Tsang***, 828 So. 2d 785, 793-94 (Miss. 2002)).

¶9.     In ***Watts***, this Court considered numerous *facts* in its determination: (1) UMMC created UAS; (2) UAS was "overseen" by UMMC; (3) UAS supplemented income to UMMC's faculty; (4) the day-to-day activities were overseen by the department chair, who "serve[d] at the pleasure of the chancellor of the medical school;" (5) UAS consisted only of "full-time UMMC faculty-physicians;" (6) the faculty physicians could practice only in locations approved by UMMC; and (7) " . . . money [was] distributed only on a point system based on factors other than mere patient service." ***Watts***, 828 So. 2d at 790, 794.

¶10.    In ***Bolivar***, this Court found that Bolivar Leflore Medical Alliance ("BLMA") and its employee, Dr. Warrington, were an instrumentality of Greenwood Leflore Hospital ("GLH"), a community hospital, based on *facts* developed. ***Bolivar***, 938 So. 2d at 1232. We found the following *facts*: (1) GLH created and oversaw BLMA, (2) two-thirds of the Executive Committee, which oversaw and controlled the "business affairs" of BLMA, was appointed by GLH, (3) GLH retained 98% interest in BLMA's "income and losses," (4) pursuant to contract, Warrington could provide services only for GLH or the partnership, and (5) Warrington had entered into a covenant not to compete in the event that he left the partnership. ***Bolivar***, 938 So. 2d at 1228. Specifically, this Court determined that BLMA was

6

an instrumentality of GLH "[s]ince GLH . . . a 'community hospital' . . . maintains 98% interest in the income and losses of BLMA and two-thirds (2/3) control over the Executive Committee membership of BLMA." ***Bolivar***, 938 So. 2d at 1231.

¶11.	In ***Estate of Frederick ex rel. Sykes v. Quorum Health Resources, Inc.***, 45 So. 3d 667 (Miss. Ct. App. 2009), *reversed on other grounds by* ***Estate of Frederick ex rel. Sykes v. Quorum Health Resources, Inc.***, 45 So. 3d 641 (Miss. 2010), the Court of Appeals found that Quorum Health Resources, Inc., was an instrumentality of Neshoba County Nursing Home ("NCNH"). ***Estate of Frederick***, 45 So. 3d at 675. The *facts* revealed Quorum and NCNH had entered into an agreement which specifically stated that " . . . Quorum [was] acting solely as the agent of the Hospital." ***Id***. The agreement further stipulated that NCNH was not relinquishing *any* of its "control or authority" to Quorum. ***Id***. at 674. It was undisputed that Quorum was an agent of NCNH, and therefore, it was clear from the agreement that Quorum was an instrumentality of NCNH. All three cases are *fact*-specific and are wholly unrelated to the success, *vel non*, of a Rule 12(b)(6) motion.

¶12.	In the case *sub judice*, facts were and are still undeveloped, precluding the trial court and this Court from determining whether Plaintiff's claims, as alleged in its complaint, can be pursued only under the MTCA, as ordered by the trial court, and Plaintiff may not pursue a cause of action as contemplated by Section 71-3-151, *et seq*, or otherwise. Absent factual development, no court at this stage of the proceedings could accurately discern whether GGA is an instrumentality of the Commission, *vel non*, as argued by GGA.

## CONCLUSION

7

¶13. Therefore, the judgment of the Madison County Circuit Court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

¶14. **REVERSED AND REMANDED**.

**WALLER, C.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE AND COLEMAN, JJ.; LAMAR, J., JOINS IN PART. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR AND PIERCE, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶15. The Mississippi Workers' Compensation Group Self-Insurer Guaranty Association (the Association) was created by statute,[7] and, as an instrumentality of the State of Mississippi, it clearly is covered by the Mississippi Tort Claims Act "MTCA"). Because that is the only question before us, I respectfully dissent.

¶16. My reason for not fully joining Justice Coleman's opinion is that I see no need for any evaluation of whether the Association is also an instrumentality of the Workers' Compensation Commission—although I agree with him that it is. Black's Law Dictionary defines an instrumentality as "1. A thing used to achieve an end or purpose. 2. A means or agency through which a function of another entity is accomplished, such as a branch of a governing body."[8] So the question is whether the Legislature created the Association to achieve "an end or purpose" properly within its purview.

---

[7] Miss. Code Ann. § 71-3-159 (Rev. 2011).

[8] *Black's Law Dictionary* 681 (abr. 9th ed. 2010).

8

¶17. It seems obvious that every entity the Legislature statutorily creates is to achieve some governmental end or purpose. Why would—and perhaps more importantly, how could—the Legislature create an entity with absolutely no governmental purpose? When, as here, the Legislature delegates to an entity enforcement powers that exceed those possessed by private citizens, the entity is a governmental instrumentality.

¶18. That brings us to the statutorily created Association. Among its statutory purposes is to protect citizens from financial loss caused by "the insolvency of a self-insurer . . . ."[9] The majority scoffs at the notion that the Association's statutory purpose "to protect the public" is a legitimate governmental purpose. If protecting the public is not a legitimate governmental purpose, one wonders why the Attorney General has a Consumer Protection Division, and why there are laws against fraud.

¶19. It cannot seriously be doubted that protection of the public is a legitimate governmental purpose. And to further that purpose, the Legislature created the Association to serve as its instrumentality and granted it enforcement powers, including the power to assess "each individual self-insurer" in the State of Mississippi.[10] So, clearly, the Association was created as an instrumentality of the State of Mississippi to serve a legitimate governmental purpose.

---

[9] Miss. Code Ann. § 71-3-153 (Rev. 2011).

[10] Miss. Code Ann. § 71-3-163(c) (Rev. 2011).

¶20. The MTCA applies to the State of Mississippi and all of its "political subdivision[s]"[11] and "instrumentalit[ies]."[12] There are no exceptions. So clearly it applies to the Association. And because the Act applies to the Association, any lawsuit—including the one before us today—must be filed, and must proceed according to the provisions of the MTCA.[13] And because that is the only question before us, we should affirm the trial judge.

¶21. The Guaranty Association Act does include a provision that provides certain immunity from suits.[14] But whether the Association is immune under the Guaranty Association Act or the MTCA[15]—or both—is not before us in today's case. The trial judge held no more than that the Association is covered by the MTCA, and any suit against it must proceed according to the requirements of that Act. The trial judge was exactly correct.

**PIERCE AND COLEMAN, JJ., JOIN THIS OPINION. LAMAR, J., JOINS THIS OPINION IN PART.**

**COLEMAN, JUSTICE, DISSENTING:**

¶22. The purpose of an appeal from an interlocutory order is to obtain appellate resolution on a question of law that may: "(1) [m]aterially advance the termination of the litigation and avoid exceptional expense to the parties; or (2) [p]rotect a party from substantial and

---

[11] Miss. Code Ann. §11-46-1(i) (Rev. 2012).

[12] Miss. Code Ann. §11-46-1(j) (Rev. 2012).

[13] Miss. Code Ann. §11-46-11 (Rev. 2012).

[14] Miss. Code Ann. §71-3-179 (Rev. 2011).

[15] Miss. Code Ann. §11-46-9 (Rev. 2012).

10

irreparable injury; or (3) [r]esolve an issue of general importance in the administration of justice." Miss. R. App. P. 5(a). *See also **Kilgore v. Barnes***, 490 So. 2d 895, 896 (Miss. 1986) (the Court grants interlocutory appeals to "finally settle the controlling principles of law in the case").

¶23. Comp Choice petitioned the Court for interlocutory appeal because the trial court reached a conclusion of law that the Mississippi Tort Claims Act applied to the Guaranty Association and that conclusion of law controlled the litigation. We agreed, stayed the litigation in the trial court, and granted the interlocutory appeal, purportedly for the purpose of reviewing the trial court's conclusion and answering a question of law important not only to the general administration of justice but to the parties involved in the instant litigation. However, the majority now disposes of the appeal without answering the question presented regarding the controlling principle of law and fails to accomplish the purpose for which we allow interlocutory appeals. In my opinion, the question can be answered based on the law and record before us. I would answer the question posed by the parties, which would allow the parties and court below to proceed along the correct legal path.[16] Therefore, respectfully, I dissent.

**Facts and Procedural History**

¶24. As explained by the majority, Comp Choice was a workers' compensation group self-insurer operating under a certificate of authority granted by the Mississippi Workers'

---

[16] While I agree with the analysis offered by Presiding Justice Dickinson in his dissent, the parties raised the arguments I address herein.

11

Compensation Commission ("Commission"). According to Mississippi Code Section 71-3-159, all group self-insurers, like Comp Choice, are members of the Mississippi Workers' Compensation Group Self-Insurer Guaranty Association ("Guaranty Association"). In January 2009, Comp Choice surrendered its certificate of authority to operate as a group self-insurer following a review by the Commission and the Commission's decision not to approve the Comp Choice Fund for future operation. Comp Choice claims that, when it surrendered its certificate of authority, the Fund had $2,770,000 in cash, plus private investments, which should have sufficed to pay the remaining claims and legal obligations.

¶25. In February 2009, the Commission entered an order giving the Guaranty Association responsibility for operating the Comp Choice Fund. The Guaranty Association retained AmFed to handle the pending claims. Comp Choice objected to hiring AmFed, because AmFed charged a higher fee than the administrator Comp Choice had been using. In October 2009, Comp Choice was notified that certain assets of the Comp Choice Fund were being liquidated. Comp Choice objected, saying that certain investments were long term investments and that liquidating them prematurely would result in a loss. In April 2010, the Commission assessed approximately $1,950,000 to be divided among the Comp Choice members, claiming that amount was needed to close the outstanding claims against the Comp Choice Fund. Comp Choice asserts that it made several requests for an accounting of expenses and payments, but the Guaranty Association and AmFed never provided an accounting.

12

¶26. Comp Choice sued the Guaranty Association alleging that it had acted negligently and in bad faith in performing its duties and in operating the Comp Choice Fund. Specifically, Comp Choice alleged that the Guaranty Association negligently and wastefully spent the Comp Choice Fund's money, which included paying AmFed an exorbitant fee; negligently attempted to sell the Comp Choice Fund's assets; negligently withheld premium deposits of approximately $300,000 belonging to the members of the Comp Choice Fund; negligently and in bad faith conducted and paid for an unnecessary investigation out of the Comp Choice Fund's assets needed for claims; negligently and in bad faith engaged in questionable hiring practices and wasting assets of the Comp Choice Fund; and negligently and in bad faith prepared premium audits without detailed underwriting data. The complaint included a demand for an accounting and claims for negligence, gross negligence, breach of fiduciary duty, bad faith, conversion, and intentional infliction of emotional distress.

¶27. The Guaranty Association filed a motion to dismiss, claiming it was exempt from liability under the Mississippi Tort Claims Act and the Mississippi Workers' Compensation Self-Insurer Guaranty Association Law. The trial court granted the motion, finding that the Guaranty Association was covered by the Tort Claims Act. Because the Tort Claims Act provides the exclusive remedy for claims against covered entities, and the complaint did not allege a cause of action pursuant to the Tort Claims Act, the trial court held that Comp Choice had failed to state a claim for which relief could be granted. The trial court gave Comp Choice twenty days to file an amended complaint under the Tort Claims Act. Instead, Comp Choice petitioned the Court for interlocutory appeal. We granted Comp Choice's

13

petition for interlocutory appeal to determine whether the trial court erred by dismissing Comp Choice's complaint on the grounds that the Guaranty Association was covered by the Tort Claims Act.

**Discussion**

¶28. The only issue properly before the Court is whether the Guaranty Association is entitled to protection under the Tort Claims Act, because that is the only issue the trial court addressed. "[A]pplication of the MTCA is a question of a law that is reviewed *de novo*." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 135 (¶ 5) (Miss. 2013) (citation omitted). The grant of a motion to dismiss also raises a question of law that is reviewed *de novo*. ***Id.***

> **Whether the Mississippi Workers' Compensation Group Self-Insurer Guaranty Association is a state agency, political subdivision, or instrumentality thereof covered by the Mississippi Tort Claims Act.**

¶29. The Tort Claims Act provides the exclusive remedy for civil claims against governmental entities and employees. Miss. Code Ann. § 11-46-7 (Rev. 2012). "Governmental entity" is defined as "the state and political subdivisions." Miss. Code Ann. § 11-46-1(g) (Supp. 2014). The Tort Claims Act defines "state" and "political subdivision" as follows:

> (i) "Political subdivision" means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, charter school, volunteer fire department that is a chartered nonprofit corporation providing emergency services under contract with a county or municipality, community hospital . . . , airport authority, or other instrumentality of the state, whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.

14

(j) "State" means the State of Mississippi and any office, department, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority[,] or other instrumentality thereof, whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.

Miss. Code Ann. § 11-46-1(i), (j) (Supp. 2014).

¶30. Comp Choice asserts that the Guaranty Association is a statutorily created unincorporated legal entity, which is not a state agency or political subdivision entitled to the protections of the Tort Claims Act. Comp Choice posits that, because the Guaranty Association was created by statute and not by the Commission, it does not derive its power and authority from the Commission; thus, it is not an agent or instrumentality of the Commission. Comp Choice likens the Guaranty Association to the Mississippi Insurance Guaranty Association ("MIGA"), which the Court has said is not a state agency.

¶31. The Guaranty Association responds that it acts as an instrumentality of the Commission, in that it acts pursuant to the Commission's orders and carries out functions of the Commission. The Guaranty Association asserts that its legal status is not relevant; rather, the Court should look at its relationship with the Commission in determining whether it is an instrumentality of the state. Both parties cite cases in which the Court has determined whether certain entities are state agencies or instrumentalities of the state under the Tort Claims Act, but the cases are not directly on point. Accordingly, the case *sub judice* presents the Court with an issue of first impression.

### A. Statutory Creation

¶32.     The purpose of the Mississippi Workers' Compensation Law and the coverage requirement is to timely pay disability benefits and medical expenses to workers who suffer work-related injuries and to encourage them to return to work. Miss. Code Ann. § 71-3-1(3) (Supp. 2014). The Court has said that "the purpose behind the Workers' Compensation Law is to share amongst workers, employers, and consumers the burden of supporting those whose ability to work is seriously diminished or eliminated." *Meridian Prof'l Baseball Club v. Jensen*, 828 So. 2d 740, 749 (¶ 24) (Miss. 2002) (citations omitted). Employers with at least five employees are required to have workers' compensation coverage. Miss. Code Ann. § 71-3-5 (Rev. 2011). Small companies "engaged in a common type of business" are allowed to come together and form a group to "pool their liabilities." Miss. Code Ann. § 71-3-75(3) (Rev. 2011). Those groups are called "self-insured groups," and they must be approved by the Commission. *Id.* The Workers' Compensation Law provides:

> **Pooling of liabilities:** The commission may, under such rules and regulations as it prescribes, permit two (2) or more employers engaged in a common type of business activity or pursuit, or having other reasons to associate, to enter into agreements to pool their liabilities under this section for the purpose of qualifying as group self-insurers, and, in conjunction therewith, to enter into agreements to pool any other liabilities to their employees, and each employer member of such approved group shall be classified as a self-insurer. . . .

Miss. Code Ann. § 71-3-75(3) (Rev. 2011). Comp Choice was a group self-insurer comprised of logging and timber companies.

¶33.     In addition to the Workers' Compensation Law, self-insurers are subject to the Mississippi Workers' Compensation Self-Insurer Guaranty Association Law. *See* Miss.

16

Code Ann. §§ 71-3-151-181 (Rev. 2011). The stated purpose of the Self-Insurer Guaranty

Association Law is:

> . . . to provide a mechanism for the payment of the covered claims under the Workers' Compensation Law, to avoid excessive delay in payment and to avoid financial loss to claimants because of the insolvency of a self-insurer, to assist in the detection and prevention of self-insurer insolvencies, and to provide associations to assess the cost of such protection among self-insurers.

Miss. Code Ann. § 71-3-153 (Rev. 2011). Comp Choice was a member of the Guaranty

Association pursuant to Mississippi Code Section 71-3-159.

¶34. Members of the Guaranty Association's board of directors are selected by the

"member self-insurers, subject to the approval of the [C]ommission." Miss. Code Ann. § 71-

3-161(1) (Rev. 2011). The Guaranty Association is required to submit a "plan of operation"

to the Commission for approval. Miss. Code Ann. § 71-3-165 (Rev. 2011). Section 71-3-

163 outlines the powers and duties of the Guaranty Association, and it has immunity for good

faith actions taken in the course of carrying out its statutory duties. Miss. Code Ann. § 71-3-

179 (Rev. 2011).

¶35. Comp Choice is correct that the Guaranty Association is statutorily created and

derives its authority from statutes. However, the fact that an entity acts pursuant to statute

does not preclude it from being an instrumentality of a state entity, as Comp Choice seems

to argue. In fact, the opposite is true. The Court has held that "[g]overnmental actions under

the MTCA are those which are performed pursuant to the act of statute [sic] or are a matter

of public necessity." *Spencer v. Greenwood/Leflore Airport Auth.*, 834 So. 2d 707, 711 (¶

12) (Miss. 2003) (citing *Thomas v. Hilburn*, 654 So. 2d 898, 900 (Miss. 1995)). Thus, the

Guaranty Association's duties and responsibilities performed pursuant to statute could be considered "governmental activities." Further, by and large, much of the Guaranty Association's operation is subject to the Commission's approval. The Guaranty Association maintains that its legal status as a "statutorily created unincorporated legal entity" – as Comp Choice labels it – is not relevant. The Guaranty Association asks the Court to look at its relationship with the Commission to determine whether it is an instrumentality of the Commission and, thus, of the state.

## B. Instrumentality of the Commission

¶36. The Guaranty Association asserts that it is an instrumentality of the state because it acts as an intermediary or agent of the Commission and carries out some of the Commission's functions at its direction. The Tort Claims Act does not define "instrumentality" under Section 11-46-1, but the Court has held that the Legislature used "'instrumentality' as an inclusive term so as not to limit the means by which the state could carry out its governmental functions." *Mozingo v. Scharf*, 828 So. 2d 1246, 1255 (¶ 26) (Miss. 2002). The Court also has adopted the dictionary definition of "instrumentality," writing that it is defined as "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body." *Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222, 1228 (¶ 16) (Miss. 2006) (quoting *Webster's Third New Int'l Dictionary* 1172 (3d ed. 1986)).

18

¶37. The Guaranty Association cites *Estate of Fedrick ex rel. Sykes v. Quorum Health Res., Inc.*, 45 So. 3d 667 (Miss. Ct. App. 2009), *rev'd*, 45 So. 3d 641 (Miss. 2010); *Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222 (Miss. 2006); and *Mozingo v. Scharf*, 828 So. 2d 1246 (Miss. 2002), in support of its position that it is an instrumentality of the state, like the entities in the above-listed cases, which were agents of community hospitals. The Tort Claims Act definition of political subdivision specifically includes community hospitals. *See* Miss. Code Ann. § 11-46-1(i) (Supp. 2014).

¶38. *Estate of Fedrick* was a Court of Appeals case that was overruled on other issues. The entity in question, Quorum, was the management company for a nursing home, which was a subsidiary of a community hospital owned by the county. *Estate of Fedrick*, 45 So. 3d at 669 (¶ 3). Quorum had entered a management agreement with the hospital, which specifically provided that Quorum was an agent of the hospital, that the hospital did not relegate any of its authority or control of operations to Quorum, that Quorum was required to submit its budget and annual management plan to the hospital for approval, and that Quorum could not hire or execute contracts without approval. *Id.* at 675 (¶¶ 26-30). Based on the specific terms of the management agreement, the Court of Appeals held that Quorum was an instrumentality of the state entitled to protection under the Tort Claims Act. *Id.* at 675 (¶ 31). The record in the instant case does not include a similar agreement between the Guaranty Association and the Commission.

¶39. Bolivar Leflore Medical Alliance was a family medical clinic created by agreement between Greenwood Leflore Hospital and several physicians. *Bolivar Leflore*, 938 So. 2d

19

at 1223 (¶ 2). The Court held that Bolivar Leflore Medical Alliance was an instrumentality of Greenwood Leflore Hospital, a community hospital. The decision was based on the fact that Greenwood Leflore had a 98% interest in the clinic and majority control of the executive committee for Bolivar Leflore, which executive committee in turn had authority and control over its business affairs. *Id.* at 1232 (¶ 28). The Court found that Bolivar Leflore was "an intermediary or agent through which certain functions of [Greenwood Leflore] are accomplished" and, therefore, it was an "instrumentality" of Greenwood Leflore entitled to the protections of the Tort Claims Act. *Id.* In the instant case, the Guaranty Association is comprised of a group of private employers, and it is not owned or operated by the Commission.

¶40. In *Mozingo v. Scharf*, the Mozingos sued Dr. Scharf for medical malpractice. Dr. Scharf was a physician and professor employed by the University of Mississippi Medical Center (UMMC) and University Anesthesia Services (UAS), which was a departmental practice plan at UMMC.[17] *Mozingo*, 828 So. 2d at 1249 (¶ 3). The Court applied a five-part test, established in *Miller v. Meeks*, 762 So. 2d 302 (Miss. 2000), for determining whether "a doctor is considered an independent contractor or a state employee for the purposes of the MTCA." *Mozingo*, 828 So. 2d at 1250 (¶ 8). As an employee of UMMC, Dr. Scharf was

---

[17] "Medical practice plans are organized groups of physicians with medical school faculty appointments who, in addition to research and medical education responsibilities, provide patient care services to both insured and uninsured patients. Most of the medical practice plans utilize UMMC departmental personnel within their respective departments to perform work on behalf of the medical practice plans." *Mozingo*, 828 So. 2d at 1254 (¶ 23).

20

"required to participate in his department's practice plan, UAS[,]" and he provided dual services as an anesthesiologist and a professor. *Id.* at 1253 (¶ 21). Dr. Scharf was an employee of both UMMC and UAS, and he received compensation from both. *Id.* The Court held that Dr. Scharf was a state employee because he was employed by UMMC, and he was entitled to immunity under the Tort Claims Act. *Id.* The instant case does not involve any state employees. The Guaranty Association exercises its power through a board of directors, who are volunteers not employed by the Commission. However, the Commission must approve the members of the board. Miss. Code Ann. § 71-3-161(1) (Rev. 2011).

¶41. The entities in the cases cited by the Guaranty Association are not comparable. The Court has established a separate test for determining whether doctors are state employees under the Tort Claims Act, and it lacks applicability here. *Mozingo*, 828 So. 2d at 1250 (¶ 8); *Miller*, 762 So. 2d 310 (¶ 20). In *Estate of Fedrick*, Quorum operated under a management agreement that specifically named it an agent of the community hospital subject to the hospital's control and direction. *Estate of Fedrick*, 45 So. 3d at 675 (¶ 31). No similar agreement is in the record here. In *Bolivar Leflore*, the entity at issue was akin to a subsidiary of the community hospital, and it was owned and controlled by the hospital. *Bolivar Leflore*, 938 So. 2d at 1232 (¶ 28). Community hospitals are defined in the Tort Claims Act, thus, a definition can be applied to determine if they, or their agents or intermediaries, fall within its scope. The Guaranty Association is an entirely different type of organization.

21

¶42. Comp Choice relies on several cases in which the Court held that the entities at issue were not instrumentalities of the state: *Poppenheimer v. Estate of Coyle*, 98 So. 3d 1059 (Miss. 2012), *Flye v. Spotts*, 94 So. 3d 240 (Miss. 2012), and *Knight v. Terrell*, 961 So. 2d 30 (Miss. 2007). *Poppenheimer* and *Flye* dealt with volunteer fire departments, and *Knight* addressed a private security officer. In *Flye*, the Court held that the term "body corporate" under the definition of "political subdivision" applied "only to governmental/public entities, not private." *Flye*, 94 So. 3d at 245 (¶ 9). The volunteer fire department was a private entity that contracted with the county to provide fire protection services. *Id.* at 247 (¶ 15). The *Flye* Court cited *Knight v. Terrell*, writing that it stood "for the proposition that a private company and its employees who provide 'governmental activities' via contract with a political subdivision are not immune from liability under the MTCA." *Id.* at 247 (¶ 14). The *Knight* Court held, "[u]nless or until the Legislature expressly crafts the statute to provide constabulary immunity to independent contractors, we will not draft one where it does not exist." *Knight*, 961 So. 2d at 33 (¶ 12). Notably, Section 11-46-1 has since been amended to include volunteer firefighters and volunteer fire departments in the definitions of "employee" and "political subdivisions." *See* Miss. Code Ann. § 11-46-1(f), (i) (Supp. 2014). In *Poppenheimer*, the Court relied almost exclusively on *Flye* and held that the volunteer fire department was an independent contractor, and "as a private, nonprofit organization, the volunteer fire department did not meet the definition of a 'political subdivision.'" *Poppenheimer*, 98 So. 3d at 1064 (¶¶ 14, 17) (citing *Flye*, 94 So. 3d at 244-

22

48 (¶¶ 5-15)). Again, the Guaranty Association is quite different from a volunteer fire department, making the comparison a difficult one.

¶43. Comp Choice also asserts that the Guaranty Association should be likened to MIGA, which the Court has held is not a state agency. While Comp Choice is correct that the Court has said "MIGA is not a state agency[,]" the cases cited by Comp Choice are not Tort Claims Act cases and the contexts were very different from the case at hand. *See Owens Corning v. Miss. Ins. Guar. Ass'n*, 947 So. 2d 944, 945-46 (¶ 5) (Miss. 2007). For instance, in *Owens Corning*, the Court made the statement that MIGA was not a state agency in determining whether deference should be given to MIGA's interpretation of the Insurance Association Guaranty Law. *Id.* The Court was not considering whether MIGA was subject to the protections of the Tort Claims Act, and the case does not provide an analysis under the Tort Claims Act.

¶44. Comp Choice boldly writes that "other numerous cases over the years adequately suggest that [the Guaranty Association], as well as any other guaranty association in Mississippi, is not entitled to the protections of Miss. Code Ann. § 11-46-1, et seq., as it is not an instrumentality of the state or other political subdivision." In support of its contention, Comp Choice cites *Mississippi Surplus Lines Association v. State of Mississippi*, 442 F. Supp. 2d 335 (S.D. Miss. 2006), and *Bobby Kitchens, Inc. v. Mississippi Insurance Guaranty Association*, 560 So. 2d 129 (Miss. 1989). Neither case stands for Comp Choice's proposition, and neither is a Tort Claims Act case. In *Mississippi Surplus Lines Association*, although the Southern District Court said MSLA was not a "public body," it concluded that

23

MSLA existed for the sole purpose of assisting the Insurance Commissioner, and the court's rationale actually supports the position that guaranty associations are agents or instrumentalities of the entities they were created to assist. *Miss. Surplus Lines Assoc.*, 442 F. Supp. 2d at 339.

¶45. While the cases cited by both parties present factual situations and address entities far different from the Guaranty Association, some insight can be gleaned from analyzing them. In each case, control by the state entity was an important factor in determining whether the other entity was an instrumentality of the state. The Guaranty Association is not under the complete control of the Commission, but it is required to get the Commission's approval for many actions. It also acts at the direction of the Commission, evidenced by its involvement in the instant case, as the Commission directed the Guaranty Association to take over the Comp Choice Fund. The Commission also acts on the recommendations of the Guaranty Association. For instance, the Commission issued the order assessing $1,950,000 to be divided among the Comp Choice members at the Guaranty Association's request.

¶46. The Guaranty Association maintains that the Legislature intended it to act as an agent of the Commission to carry out statutorily established activities. For example, by administering Comp Choice pursuant to the Commission's orders, the Guaranty Association "carried out" some of the Commission's regulatory functions. The Guaranty Association claims that is an agent through which the Commission accomplishes the day-to-day regulation of self-insurer groups, including: managing and administering the statutory fund required under Section 71-3-163(c) to which all group self-insurers are required to

24

contribute; aiding the Commission in detecting and preventing member insolvencies by asking the Commission to examine groups that it believes are in a hazardous financial condition pursuant to Section 71-3-173(a); and preparing reports and making recommendations to the Commission regarding solvency or reorganization of group self-insurers pursuant to Section 71-3-173(c) and (d).

¶47.    The Guaranty Association maintains that it is an intermediary of the Commission under its control, and it provides the following examples of oversight and control by the Commission: the Commission must approve the Guaranty Association's board of directors; the Guaranty Association is required to submit a plan of operation to the Commission for approval; the Guaranty Association is regulated by the Commission and subject to examination by the Commission; the Guaranty Association must submit annual financial reports to the Commission and make its minutes and records available to the Commission. *See* Miss. Code Ann. §§ 71-3-161, 71-3-165, 71-3-175 (Rev. 2011).   The evidence of oversight by the Commission and examples of activities performed by the Guaranty Association indicate that the Commission exerts a substantial amount of control over the Guaranty Association and that the Guaranty Association assists the Commission with its day-to-day regulatory functions.

¶48.    The Guaranty Association furthers the purpose of the Commission and the Workers' Compensation Law, which is to provide compensation for injured employees with the goal of rehabilitation and restoration to work.  Applying the broad definition of "instrumentality" from ***Mozingo*** – that the Legislature intended it to be "an inclusive term so as not to limit the

25

means by which the state could carry out its governmental functions," in addition to the dictionary definition adopted in *Bolivar Leflore*, that an instrumentality is something that "serves as an intermediary or agent through which one or more functions of a controlling force are carried out" – I would hold that the Guaranty Association is an instrumentality of the Commission. *See Mozingo*, 828 So. 2d at 1255 (¶ 26); *Bolivar Leflore*, 938 So. 2d at 1228 (¶ 16).

### C. Immunity under Section 71-3-179

¶49. Comp Choice claims that, because the Legislature included an immunity provision in the Self-Insurers Guaranty Law, it did not intend for the Guaranty Association to be covered under the Tort Claims Act as well. Section 71-3-179 addresses immunity afforded to the Guaranty Association:

> Subject to Section 71-3-174, there shall be no liability on the part of and no cause of action of any nature shall arise against any individual self-insurer, any group self-insurer, association, agents and employees of an association, board of directors of an association, and the commission and its employees and representatives, or any of them, for any good faith, affirmative action taken by any of them in the performance of their powers and duties under Sections 71-3-151 through 71-3-181. This section does not apply to individual employers who are members of a group self-insurer. Such immunity shall not extend to any acts of gross negligence by any such individual self-insurer, group self-insurer, association, agents and employees of an association, board of directors of an association and the commission and its employees and representative committed in the performance of their duties hereunder.

Miss. Code Ann. § 71-3-179 (Rev. 2011). The Guaranty Association maintains that Section 71-3-179 adds to the immunity provided under the Tort Claims Act and that the two sections can be read in harmony. The Guaranty Association cites *Parsons v. Mississippi State Port*

26

*Authority*, 996 So. 2d 165 (Miss. Ct. App. 2008), in which the Court of Appeals held that an immunity statute in the Mississippi Emergency Management Law could be read in conjunction with the Tort Claims Act. The Court of Appeals wrote:

> A detailed review of these statutes leads this Court to conclude that the MTCA and the MEML can be read in conjunction with each other and that the MTCA has not superseded the MEML. Statutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each. ***Roberts v. Miss. Republican Party State Executive Comm.***, 465 So. 2d 1050, 1052 (Miss. 1985). The MTCA provides that it is the exclusive remedy against the state and its agencies and, thus, is applicable in the instant case. However, under Mississippi Code Annotated section 11-46-9(1)(f), claims that are limited or barred by other provisions of law are exempted from liability under the MTCA. The MEML is one such law that allows the state and its agencies to be immune from liability stemming from its activities during emergency situations. Following the rules of statutory construction, the two statutes can be read together to provide immunity for the state and its agencies for its activities during times of emergency management while simultaneously being exempt from liability under the MTCA.

*Parsons*, 996 So. 2d at 169 (¶ 19).

¶50.    Comp Choice asserts that, because the Self-Insurers Guaranty Association Law was enacted after the Tort Claims Act and makes no mention of it, then the Legislature did not intend for the Tort Claims Act to apply to the Guaranty Association. However, as the Guaranty Association points out, the Court has said that "[i]f the subsequent statute does not repeal the former, each statute cited must be given effect." ***Tunica County v. Hampton Co. Nat'l Sur., LLC***, 27 So. 3d 1128, 1134 (¶ 16) (Miss. 2009). The Court has held repeatedly that "statutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." ***Miss. Gaming Comm'n v. Imperial Palace of Miss.***, 751 So. 2d 1025, 1029 (Miss. 1999) (quoting ***Roberts v. Miss.***

27

*Republican Party State Executive Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985)). The statutes are, for the most part, redundant but are not in conflict, and each can be given effect. Accordingly, in my opinion, the enactment of the immunity provision in the Guaranty Association Law does not abrogate the immunity in the Tort Claims Act.

### Conclusion

¶51. Considering the purpose of the Workers' Compensation Law and the broad definition of instrumentality – that the Legislature intended it to be "an inclusive term so as not to limit the means by which the state could carry out its governmental functions" – I would hold that the Guaranty Association serves as an intermediary or agent to carry out certain functions of the Commission and that it is an instrumentality of the Commission protected by the Mississippi Tort Claims Act. I would affirm the circuit court's grant of the Guaranty Association's motion to dismiss.

¶52. The majority disposes of the appeal without answering the question presented regarding the controlling principle of law and fails to accomplish the purpose for which we grant interlocutory appeals. *See* Miss. R. App. P. 5(a); *Kilgore*, 490 So. 2d at 896. Because the question can be answered with the facts before us, I would answer the question of law posed by the parties, which would allow the parties and court below to proceed. Instead, the majority leaves the parties in no better position, with no more clarity on the question of law presented, than when they arrived before the Court. Respectfully, I dissent.

**DICKINSON, P.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION.**